IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| FILEMON BRITO BARRAJAS<br><br>        Plaintiff-Petitioner,<br><br>vs.<br><br>KRISTI NOEM, Secretary, Department of Homeland Security; PAM BONDI, United States Attorney General; SIRCE OWEN, Acting Director, Executive Office for Immigration Review; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement (ICE); PETER BERG, Director, St. Paul ICE Field Office; CORY WILLIAMS, Polk County Jail Administrator; Kevin SCHNEIDER, Polk County Sheriff; DEPARTMENT OF HOMELAND SECURITY; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and IMMIGRATION; OMAHA IMMIGRATION COURT;  AND CUSTOMS ENFORCEMENT,<br><br>        Defendants-Respondents. | Case No. 4:25-cv-00322-SHL-HCA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION** |

**I.**     **INTRODUCTION.**

Federal officials have initiated removal proceedings against Petitioner Filemon Brito Barrajas, a citizen of Mexico who has lived in the United States since the early 2000s. Pending completion of the removal proceedings, Petitioner has been detained without a bond hearing. He argues that this violates his statutory and due process rights and thus asks for a preliminary injunction either (a) requiring federal officials to give him a bond hearing within seven days, or (b) ordering him released outright. (ECF 2.)

For reasons set forth below, the Court concludes that Petitioner is entitled to a bond hearing. The Court will not, however, order him released outright, as it is for an Immigration Judge to decide the issue of release or detention in the first instance. The Court therefore GRANTS IN PART and DENIES IN PART his Motion for Preliminary Injunction.[1]

**II.**     **FINDINGS OF FACT.**

---

[1] Petitioner also requested a temporary restraining order, but this request is moot in light of the Court's decision to enter a preliminary injunction.

1

The material facts are not in dispute. Petitioner is a citizen of Mexico who has lived in the United States for more than twenty years. He entered the United States only once, in the early 2000s, and has remained here ever since. (ECF 13-4, p. 16, ¶ 60(a).) He does not have valid legal status in the United States. (ECF 13-3, p. 3.) Until recently, he had no criminal history. (ECF 13-4, p. 16, ¶ 60(c).) However, on June 21, 2025, he was arrested for the crime of Contempt of Court and placed in custody in the Polk County Jail. (ECF 13-3, p. 3.) He was convicted on July 16, 2025, and sentenced to "time served," which amounted to twenty-four days. (Id.)

At some point while Petitioner was in custody in the Polk County Jail, the United States Immigration and Customs Enforcement ("ICE") lodged a detainer against him. Accordingly, after Petitioner received his "time served" sentence, he was remanded into ICE custody. (Id.) On July 17, 2025, ICE issued a Notice to Appear to Petitioner informing him that ICE had commenced removal proceedings against him. (ECF 13-2.) Petitioner's first immigration hearing occurred on August 19, 2025. (Id., p. 1.) It appears that he has remained housed at the Polk County Jail while in ICE custody.

On August 18, 2025, Petitioner moved for a bond review hearing in the Executive Office for Immigration Review ("EOIR"), Immigration Court. (ECF 13-4.) An Immigration Judge denied the request, concluding it had no jurisdiction to hold a bond hearing or release him from custody. (ECF 13-5.) The Immigration Judge cited Section 235(b)(2)(A) of the Immigration and Naturalization Act ("INA"), which is codified at 8 U.S.C. § 1225(b)(2)(A). (Id.) Petitioner's next in-person hearing in the Immigration Court is scheduled for November 3, 2025. (ECF 13-6.)

Petitioner alleges that until very recently, people in his situation—i.e., citizens of foreign countries who have lived in the United States for an extended period of time but lack legal status—have been granted bond hearings pursuant to Section 236 of the INA, codified at 8 U.S.C. § 1226. Petitioner alleges that Immigration Judges have begun, however, to deny bond hearings for lack of jurisdiction, as the Immigration Judge did here. On September 5, 2025, the Board of Immigration Appeals ("BIA") held, in a different case, that Immigration Judges lack jurisdiction to hold bond hearings. (ECF 13-7.) Petitioner asserts that the BIA's holding is incorrect and asks the Court to enter preliminary injunctive relief either: (a) requiring the EOIR to hold a bond hearing within seven days, or (b) ordering Petitioner released outright. The Federal Defendants[2] resist on

---

[2] The "Federal Defendants" include the following: Kristi Noem, Secretary of the Department of Homeland Security; Pam Bondi, Attorney General; Sirce Owen, Acting Director for the Executive Office for Immigration Review; Todd

two grounds: (i) the Court lacks jurisdiction over Petitioner's claims; and (ii) the Immigration Judge correctly interpreted the INA as prohibiting a bond hearing. (ECF 18.) The County Defendants[3] take no position. (ECF 20.)

### III.    PRELIMINARY INJUNCTION STANDARDS.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "[T]he burden of establishing the propriety of an injunction is on the movant." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The Court must consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (alteration in original) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "While 'no single factor is determinative,' the probability of success factor is the most significant." *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020) (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)).

As to the remaining three factors, a plaintiff "is not required to prove with certainty the threat of irreparable harm, but it must prove that 'irreparable injury is likely in the absence of an injunction.'" *Sleep No. Corp.*, 33 F.4th at 1018 (quoting *Winter*, 555 U.S. at 22). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "In balancing the equities, [the Court] weigh[s] 'the threat of irreparable harm' shown by the movant against 'the injury that granting the injunction will inflict on other parties litigant.'" *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (quoting *Dataphase Sys.*, 640 F.2d at 113.) This "requires a court to distinguish between 'weak or illusory injuries' and 'very real threats' of injuries." *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 798 (S.D. Iowa 2022) (cleaned up) (quoting *Sak v. City of Aurelia*, 832 F. Supp. 2d 1026, 1046 (N.D. Iowa 2011)). It considers harm to both the litigants and other interested parties, like

---

M. Lyons, Acting Director of ICE; Peter Berg, the St. Paul ICE Field Office Director; the Department of Homeland Security; the Executive Office for Immigration Review; the Omaha Immigration Court; and ICE.

[3] The "County Defendants" include Polk County Jail Administrator Cory Williams and Polk County Sheriff Kevin Schneider.

3

the public. *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1047 (N.D. Iowa 2008). The last factor, the public interest, "invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious." *Id*. at 1048.

## IV. LEGAL ANALYSIS.

### A. The Court Has Jurisdiction to Review Petitioner's Claims.

The Federal Defendants argue, as a threshold matter, that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and (b)(9) to review Petitioner's claims. Section 1252(g) states, subject to certain exceptions, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This jurisdiction-stripping provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision…." *Id.* Similarly, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process.

Federal officials have raised this argument in recent months in cases similar to this one. The argument has been repeatedly rejected. *See, e.g.*, *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ----, 2025 WL 2374411, at *5–8 (D. Minn. Aug. 15, 2025); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 705–06 (D. Minn. 2025). The Court agrees with these well-reasoned decisions and will not repeat their analysis in its entirety. It boils down to two things:

<u>First</u>, the United States Supreme Court has interpreted the jurisdiction-stripping provision of § 1252(g) narrowly to cover only the three "discrete acts" of commencing proceedings, adjudicating cases, and executing removal orders. *See Maldonado*, 2025 WL 2374411, at *5–6

(discussing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) and *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)). A request for a bond hearing is not one of those three acts, but rather is "independent of, and collateral to, the removal process." *Hasan*, 2025 WL 2682255, at *4 (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

Second, and similarly, the Supreme Court has squarely held that § 1252(b)(9) does not deprive federal courts of jurisdiction over cases challenging whether or when bond hearings are required in removal proceedings. *See Jennings*, 583 U.S. at 292–95; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that § 1252(b)(9) did not prohibit judicial review of claims against federal officials for detaining aliens without bond). Holding otherwise would run the risk of "mak[ing] claims of prolonged detention [in removal proceedings] effectively unreviewable." *Jennings*, 583 U.S. at 293.

In arguing otherwise, the Federal Defendants rely on language from *Jennings* suggesting that jurisdiction might not exist when aliens "challeng[e] the decision to detain them in the first place." *Id.* at 294–95. The Federal Defendants argue that "the thrust of Petitioner's claim is a challenge to the government's decision to detain him in the first place." (ECF 18, p. 15.) The Court disagrees. Petitioner is not challenging whether ICE had the authority to lodge a detainer against him or take him into custody upon completion of his state court sentence. Rather, Petitioner is challenging whether ICE can *keep* him in custody for the entirety of the removal proceeding without even a bond hearing. The Supreme Court has concluded that lower courts have jurisdiction over claims of this nature when they revolve around the proper interpretation of federal statutes. *See Jennings*, 583 U.S. at 295; *Nielsen*, 586 U.S. at 402. As this is precisely what Petitioner is asking the Court to do here, jurisdiction exists to review his claims.

B. Petitioner Is Likely to Succeed on the Merits.

On the merits, the crucial question is whether removal proceedings against aliens like Petitioner who have lived in the United States for an extended period are governed by 8 U.S.C. § 1225 (INA § 235) or 8 U.S.C. § 1226 (INA § 236.) The former applies to an "applicant for admission," which means "[a]n alien present in the United States who has not been admitted or who arrives in the United States…." § 1225(a)(1). The latter applies more generically to "an alien." § 1226(a).

Under § 1225, applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Subsection (b)(1)

5

applies to an alien "who is arriving in the United States," § 1225(b)(1)(A)(i), or, subject to the discretion of the Attorney General, "has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," § 1225(b)(1)(A)(iii). The Federal Defendants do not argue that Petitioner falls within subsection (b)(1), nor would the there be any basis in the record for such an argument so given unrebutted evidence that Petitioner came to the United States more than twenty years ago and has lived here ever since.

The Federal Defendants instead allege that Petitioner falls under subsection (b)(2), which is a "catchall provision" that "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) states that such an applicant "shall be detained for a [removal proceeding] under section 1229a of this title." The Federal Defendants argue that Petitioner is an "applicant for admission" who is subject to mandatory detention under § 1225(b)(2)(A). In essence, in their view, any alien who is in the country without valid legal status is an "applicant for admission" for purposes of § 1225.

Petitioner, by contrast, argues that he is governed by § 1226, which addresses the arrest, detention, and release of "an alien" in connection with removal proceedings. Section 1226(c) makes detention mandatory for certain categories of aliens, including those with specified criminal convictions. In early 2025, Congress passed the Laken Riley Act, which expanded the scope of mandatory detention to include an alien who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of [certain violent crimes]." § 1226(c)(1)(E). Other than situations governed by § 1226(c), an alien in removal proceedings may be released on bond or conditional parole. § 1226(a)(1), (2). Petitioner asserts that he is not subject to mandatory detention under § 1226(c) but nonetheless has been denied the bond hearing required under § 1226(a).

District courts across the country have addressed arguments similar to—and often identical to—the ones raised here. The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings. *See, e.g.*, *Hasan*, 2025 WL 2682255, at * 5–9; *Maldonado*, 2025 WL 2374411, at *11–13; *Romero v Hyde*, --- F. Supp. 3d ----, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025). This Court agrees with their persuasive analysis, the main thrust of which is that the Federal Defendants' interpretation of

§ 1225 would render substantial portions of § 1226 superfluous by making "detention mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. If this is what Congress intended, it does not make sense that it would have passed a separate statute as part of the same overall scheme that specifically contemplated bond hearings except in enumerated situations. *See id.* Indeed, it is especially difficult to square the Federal Defendants' interpretation of § 1225 with Congress's decision earlier this year to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See id.*; *Romero*, 2025 WL 2403827, at * 11. Under the Federal Defendants' interpretation of the interplay between §§ 1225 and 1226, the Laken Riley Act is meaningless. This is not how statutes are to be interpreted.

The Supreme Court itself has recognized the difference between §§ 1225 and 1226. The former applies to "aliens seeking admission into the country," while the latter applies to "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Petitioner clearly falls into the latter category. Thus, even if principles of statutory interpretation did not defeat the Federal Defendants' position (which they do), the Court would be obligated to follow the Supreme Court's guidance anyway.

Both sides have focused their merits arguments on which of §§ 1225 or 1226 is governing, and thus the Court's resolution of that issue in Petitioner's favor appears to mean that he is per se entitled to a bond hearing. To the extent another layer of analysis is necessary, however, the Court again would follow the reasoning of courts across the country that have concluded that an alien in removal proceedings governed by § 1226(a) is entitled under the due process clause to an individualized bond hearing. *See, e.g.*, *Maldonado*, 2025 WL 2374411, at *9, 13–14; *Hasan*, 2025 WL 2682255, at *10–12; *Herrera v. Knight*, --- F. Supp. 3d ----, 2025 WL 2581792, at *10–12 (D. Nev. Sept. 5, 2025). In other words, Petitioner is likely to prevail under § 1226(a) and the due process clause alike.

C.  *The Remaining Dataphase Factors Weigh in Favor of Injunctive Relief.*

Because the likelihood of success factor is the most important to determining whether to award injunctive relief, *see Carson*, 978 F.3d at 1059, the Court's analysis of the merits goes a long way toward making such relief appropriate. Nonetheless, the Court also will analyze the other three *Dataphase* factors: threat of irreparable harm, balance of harms, and public interest. *See Sleep No. Corp.*, 33 F.4th at 1016 (listing factors). Before evaluating these factors, the Court must decide which forms of injunctive relief are available in the first place, as this may affect the balancing.

The narrowest form of injunctive relief requested by Petitioner is for the Court to order the Federal Defendants to provide a bond hearing. In the alternative, however, Petitioner asks the Court to go even further and order him immediately released. The latter request, if granted, would create tension with § 1226(e), which states: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Congress clearly intended to allow the Executive Branch to make discretionary decisions without judicial oversight.

Granted, the Supreme Court has held that § 1226(e) "contains no explicit provision barring habeas review," nor does it bar federal courts from considering constitutional challenges to the Attorney General's interpretation of his or her authority. *Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding that federal courts have jurisdiction to review a constitutional challenge to § 1226(c)). In that sense, the Court has the authority to order federal officials to hold a bond hearing when governing law so requires. It also may have the authority to get involved if an error of constitutional dimension occurs in the context of that bond hearing. Outside of those narrow situations, however, it is not the Court's prerogative to assume the role of "Immigration Judge" by deciding bond or detention in the first instance. Thus, the only injunctive remedy the Court will consider ordering is a bond hearing.

With that remedy in mind, as to irreparable harm, Petitioner has lived in the United States with his family for more than twenty years. Other than his recent Contempt of Court conviction, for which he received a sentence of twenty-four days' imprisonment, he has no criminal history. Accordingly, it is plausible that he will be granted release if given an individualized hearing. By depriving him of such a hearing, the Federal Defendants are ensuring that he will remain in custody. His loss of liberty is a paradigmatic example of potential irreparable harm. *See Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. Apr. 18, 2018) (describing loss of liberty as "perhaps the best example of irreparable harm"). Moreover, even if Petitioner ends up not being released on bond, the denial of his due process right to a hearing is also a form of irreparable harm. *See Doe v. Becerra*, --- F. Supp. 3d ----, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025). Accordingly, this factor weighs in favor of injunctive relief.

The remaining factors, balance of harms and public interest, "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. Bureau of Alcohol,*

*Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023). Here, they weigh in favor of injunctive relief. As noted above, the Court would not be ordering any particular outcome on bond or detention. Rather, Petitioner simply would be entitled to his statutory and due process right to a hearing. This means the Immigration Judge will have the authority—as Immigration Judges have had for years—to evaluate Petitioner's history and circumstances and make an individualized decision. If public safety or some other appropriate factor warrants detention, Petitioner will remain in custody. If not, he will be released on bond. Either way, there is no meaningful "harm" to the Government from having to follow principles of due process. *See Hasan*, 2025 WL 2682255, at *12 (holding that the Government's interests were adequately protected by, *inter alia*, "the individualized determination of an [Immigration Judge] as to whether an individual should be released on bond under § 1226(a)"). To the contrary, "there is an extremely compelling public interest in *protecting* the fundamental principles of due process." *Id.* (emphasis added).

In sum, the *Dataphase* factors weigh in favor of injunctive relief in the form of ordering the Federal Defendants to provide Petitioner with a bond hearing.

V.   **CONCLUSION.**

The Court GRANTS IN PART and DENIES IN PART Petitioner's Motion for Preliminary Injunction. (ECF 2.) The Federal Defendants shall provide Petitioner with a bond hearing in the EOIR pursuant to 8 U.S.C. § 1226(a) within seven calendar days of this Order. Petitioner will not be required to provide security for the injunction there is no risk of costs or damages to the Federal Defendants. Because the Court is not ordering Petitioner released, the County Defendants are not obligated to take any action beyond whatever they ordinarily would do to cooperate with federal officials to ensure Petitioner's appearance at the bond hearing and comply with the outcome of that hearing.

**IT IS SO ORDERED.**

Dated: September 23, 2025

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE